IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

DENNIS BALAKIAN,                    )      No. CV-F-07-1011 OWW
                                    )
                                    )      MEMORANDUM DECISION
                                    )      AFFIRMING IN PART AND
                                    )      REVERSING IN PART ORDERS OF
                    Plaintiff/      )      BANKRUPTCY COURT AND
                    Appellant,      )      REMANDING ACTION TO
                                    )      BANKRUPTCY COURT FOR FURTHER
        vs.                         )      PROCEEDINGS
                                    )
                                    )
DANIEL BALAKIAN, et al.,            )
                                    )
                                    )
                    Defendants/     )
                    Appellees.      )
                                    )
_____)

        Dennis Balakian (Appellant) appeals from the "Order on

Motion for Sale of Real Property by Henry Wheeler, Equity

Receiver," and the "Order on Motion of Dennis Balakian to Permit

Release of Virginia Balakian from Equitable Lien and To Excuse

Him from Foreclosing on Her Interests and His Own Under the

Equitable Lien" entered in Adversary Proceedings Nos. 00-1166 and

00-1167 on May 15, 2007 and from the Bankruptcy Court's findings

of fact and conclusions of law stated on the record on May 9,

2007.[1]

A.  <u>STATEMENT OF ISSUES ON APPEAL</u>[2]

1.  Whether the Bankruptcy Court erred in denying Appellant's motion DC# MTH-5 [sic] to permit Appellant to release Virginia Balakian from the equitable liens and excuse him from foreclosing on her interests and his own under the equitable liens;

2.  Whether the Bankruptcy Court erred in denying Appellant the right to credit bid in connection with DC# MTH-5 [sic] the amounts of Fresno County Property Tax and Consolidated Irrigation District Tax which he needed to pay to protect his equitable liens and judgment liens from foreclosure by those taxing authorities;

3.  Whether the Bankruptcy Court erred in denying

---

[1]The appeal in *Dennis Balakian v. Seto Balakian, et al.*, No. CV-F-07-1012 AWI has been consolidated with this action.

In a prior hearing and pursuant to the agreement of the parties, Appellant's motion to permit interlocutory appeal was resolved by allowing the appeal to proceed and is not addressed in this Memorandum Decision.

[2]The Statement of Issues is taken from Appellant's Opening Brief.  Appellant's initial Statement of Issues on Appeal filed with this Notice of Appeal also included whether the Bankruptcy Court erred in denying Appellant's motion to require the withdrawal of the Walter Law Group.  Appellant does not list this issue in his Opening Brief and does not otherwise discuss the issue in his briefs on appeal.  Appellees moved to dismiss the appeal to the extent it raised the denial of the disqualification motion, at first on the ground of untimeliness and then on the ground of failure to prosecute the issue by not raising it in the opening brief.  Appellant contended that he "has elected to brief fully matters more important than disqualification."  Therefore, this Memorandum Decision does not address any issues pertaining to the Bankruptcy Court's denial of Appellant's motion to disqualify the Walter Law Group.  The election not to address this ground amounts to a waiver of the appeal as to counsel's alleged conflict.

Appellant the right to credit bid in connection with DC# MTH-3 [sic] the amounts of attorneys fees and costs which he needed to expend to protect his equitable liens and the real property upon which he is secured;

4.   Whether the Bankruptcy Court erred in denying the Receiver the right to sell under DC# MTH-3 [sic] the interests of Seto Balakian in the properties subject to Appellant's equitable liens separately from the interests of other owners in said properties;

5.   Whether the Bankruptcy Court erred in failing to give sufficient weight to the Court's 1998 judgment interpreting the Court's 1992 order establishing the equitable liens and the Court's 2000 judgment renewing the 1992 equitable liens order in determining whether the interests of Seto Balakian in the properties could be sold separately from the interests of other owners in said properties;

6.   Whether the Bankruptcy Court erred in interpreting the Court's 2001 order and requiring the Receiver to proceed in accordance with 11 U.S.C. § 363.

B.   <u>STANDARD OF APPELLATE REVIEW</u>.

A district court reviews the bankruptcy court's findings of fact under a clearly erroneous standard and reviews its conclusions of law de novo. *In re Windmill Farms*, 841 F.2d 1467, 1469 (9th Cir. 1988). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction

3

that a mistake has been committed." *United State v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).  As long as findings are plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced it would have reached a different result.  *Wardley Int'l Bank, Inc. v. Nasipit Bay Vessel*, 841 F.2d 259, 262 n.1 (9th Cir. 1988).

When reviewing for an abuse of discretion, "'[a] bankruptcy court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law.'" *In re Cady,* 266 B.R. 172, 178 (9th Cir.BAP 2001), *aff'd*, 315 F.3d 1121 (9th Cir.2003).  An abuse of discretion also occurs if the reviewing court has "'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached ....'" *DaRonde v. Shirley (In re Shirley),* 134 B.R. 940, 943 (9th Cir.BAP 1992).

C.   <u>BACKGROUND</u>.

On October 31, 1988, Seto Balakian, and Ara and Virginia Balakian, filed Chapter 11 bankruptcy petitions, Cases No. 88-14300 and 88-14343.  The Chapter 11 petitions were filed to protect five jointly-held properties (Properties) involved in the present appeal from foreclosure by the Bank of America.  In 1991 or 1992, Adversary Proceedings were filed against the Chapter 11 debtors and their trustee, James Ford, to determine the nature, extent and validity of interests in the Properties.[3]  On May 19,

---

[3]Appellant's brief states that they were filed in 1992 but the Adversary Proceeding case numbers, 91-1257 and 91-1258, indicate they were filed in 1991.

4

1992, Bankruptcy Judge Richard Ford issued the following Findings of Fact:

    1.  Dennis Balakian is Ara and Virginia Balakian's son.

    2.  On July 24, 1985, Seto, Armen, Ara, Virginia, Daniel, and Seto as Executor of the Estate of Hoped Balakian, executed a Promissory Note to the Bank of America for a loan in the approximate amount of $1,030,000, which was secured by Deeds of Trust on the five parcels of real property - the Balakian Ranches - and by security agreements on personal property.

    3.  In October of 1988, both Ara/Virginia and Seto filed their respective bankruptcies. Thereafter, on August 18, 1989 ..., James M. Ford was appointed as Chapter 11 Trustee in both ... cases.

    4.  On or about December 12, 1989, subsequent to the Trustee's appointment, this Court entered its order granting Bank of America relief from the automatic stay to proceed or continue with its foreclosure sale of the Balakian Ranches.  On or about December 15, 1989, the Trustee filed his motion to abandon the estates' interest in the Balakian Ranches.  Said motion was granted in January 1990 without further hearing, no opposition having been filed.

    5.  Rose and Diana [Tookmanian] had no interest in the property referred to in Exhibit 'A.'

    6.  Between the dates February 3 and February 8, 1990, Seto, individually and as Executor of the Estate of Hoped, Armen, Ara, Virginia, and Daniel executed a Forbearance and Repayment Agreement with the Bank of America. Debtors Seto and Ara/Virginia then caused a notice to be filed and a hearing set requesting this Court's order approving the Forbearance and Repayment Agreement.  The hearing was set for March 6, 1990.

    7.  On March 6, 1990, the Court entered an

5

Order approving the parties' Forbearance and Repayment Agreement.  Among other things, the Order provided as follows:

> ' ... 3.  Debtors are authorized to borrow funds on an unsecured or secured basis, and to use said funds to pay BANK OF AMERICA ... the amount provided for in the subject Agreement.
>
> 4.  Debtors are authorized to grant security for the funds borrowed by them to pay to the Bank, including deeds of trust on the 234 acres described on Exhibit 'B', hereto, in the same priority as the deeds of trust currently held by BANK OF AMERICA ... thereon, and crop liens on liens on crops growing and to be grown thereon, and the proceeds of said crops.
>
> ...

The real property described as the Balakian Ranches and consisting of five parcels is set forth in Exhibit 'A' ....

8.  On January 29, 1990, Rose advanced ... $50,000 directly to Bank of America for the benefit of the obligors for payment to the Bank of America to forestall its foreclosure. Bank of America also received an additional $50,000 from Ara/Virginia at or about the same time.

9.  On May 3, 1990, Rose paid $500,000 and Diana paid $30,000 to attorney Michael A. Milnes to be forwarded to Bank of America in partial satisfaction of the obligation under the Forbearance and Repayment Agreement. Even though the obligors on the Bank of America note had defaulted under the Agreement, Bank of America agreed to extend the foreclosure sale for ... 75 ... days from May 3, 1990, in consideration of the $500,000 payment but increased its overall demand to $1,030,000, leaving a balance of $500,000 to be paid to satisfy its indebtedness.

On July 13, 1990, the balance of $500,000 was paid to Bank of America by Dennis, who advanced such funds with the full knowledge that Rose and Diana had previously advanced a combined total of $580,000.  On July 20, 1990, Bank of America recorded reconveyance of the deeds of trust on the Balakian Ranches.

10.  This Court makes no findings of fact as to the source of funds for Dennis' payment to Bank of America.  For purposes of these proceedings, it is sufficient that the Court find that the $500,000 balance owed to Bank of America was paid in full and that the funds were received from Dennis.

11.  The Court finds that all the owners of the Balakian Ranches who were signatories to the Bank of America loan and subsequent Agreement intended that there be and consented to a replacement lien to any party advancing funds for the specific purpose of retiring the Bank of America loan.

Bankruptcy Judge Ford concluded that the Bankruptcy Court had jurisdiction and declined to abstain from the exercise of jurisdiction and further concluded:

2.  Plaintiffs pray for an order for specific performance.  California law requires that for a contract to be subject to specific performance, the terms of the contract must be sufficiently definite for the court to know what to enforce ... The Court has received the documents from the Bank of America and Tookmanian loans, both of which were admitted by stipulation into evidence. No other documents or testimony support any finding as to the interest rate, term, or payment schedule which was agreed to by all of the parties so as to permit this Court to enter an order for specific performance. Further, without any specific promissory note to specifically enforce, there cannot be any provisions for attorneys fees and costs.

3.  Equitable liens are imposed to prevent unjust enrichment and essentially are a

7

special and limited form of a constructive
trust.  Equitable liens are not a creature of
statute but rather judicially imposed to
prevent unjust enrichment and to do equity.
Equitable liens are 'much favored by courts
to do justice and prevent unfair results.'
....

The court may infer from circumstances
surrounding particular transaction that an
equitable lien does exist ... Based upon the
findings of fact and the circumstances
surrounding the transaction involved in this
particular case, the Court concludes that an
equitable lien does exist in favor of Rose
and Melky Tookmanian, Diane Tookmanian, and
Dennis Balakian.

4.   The Trustee has no interest in the real
property described in Exhibit 'A' by reason
of the January 1990 Order allowing
abandonment of the estates' interest in the
same.

Based on these findings of fact and conclusions of law, a

Judgment was entered on May 19, 1992.  In pertinent part, the

1992 Judgment provided that the Tookmanians and Dennis Balakian

hold equitable liens encumbering the property described in

Exhibit "A" in the amounts of $580,000 and $500,000 plus interest

at the legal rate of 10%, commencing May 3, 1990 and July 13,

1990, respectively.

     In 1995, the Tookmanians filed a motion for clarification of

Judge Ford's 1992 order and judgment, which was granted by Judge

Ford on January 13, 1995.[4]

     When the Tookmanians attempted to satisfy their equitable

lien by execution sale of the Properties in 1996, Ara and

---

[4]The 1995 clarification of the 1992 Judgment does not appear
to have any relevance to resolution of the present appeal.

Virginia, Seto, and Daniel Balakian filed Chapter 11 petitions to prevent the sale.  Ara and Virginia commenced an Adversary Proceeding, No. 96-1339, to determine the nature, extent, validity and priority of liens and allowed amounts of liens and the ownership interests in real property.  Bankruptcy Judge Dorian described these property interests as follows:

> 1.   <u>Parcel One</u> - (Newmark/Home Ranch): 5/16 undivided interest owned by Ara and Virginia Balakian; 5/16 undivided interest owned by Daniel Balakian; 5/16 undivided interest owned by Seto Balakian; 1/16 undivided interest owned by Rose Tookmanian;

> 2.   <u>Parcel Two</u> - (Seto's Home Ranch/Manning Ranch): 5/16 undivided interest owned by Ara and Virginia Balakian; 5/16 undivided interest owned by Daniel Balakian; 5/16 undivided interest owned by Seto Balakian; 1/16 undivided interest owned by Rose Tookmanian;

> 3.   <u>Parcel Three</u> (Guallarian Ranch): 5/12 undivided interest owned by Ara and Virginia Balakian; 5/12 undivided interest owned by Daniel Balakian; 1/12 undivided interest owned by Seto Balakian; and 1/12 undivided interest owned by Rose Tookmanian;

> 4.   <u>Parcel Four</u> (Nakashima Ranch/South Ranch): 1/2 undivided interest owned by Ara and Virginia Balakian; 1/2 undivided interest owned by Seto Balakian;

5.   _Parcel Five_ (Dammer/Zediker Ranch): 1/2 undivided

interest owned by Ara and Virginia Balakian; 1/2

undivided interest owned by Seto Balakian.[5]

On May 20, 1998, Bankruptcy Judge Dorian, entered a partial

Judgment, ruling in pertinent part:

B.   The following named person or entities hold valid
and enforceable liens in the following amounts upon the
aforesaid ownership interest of the following named
persons in the aforesaid parcels of real property as
hereafter set forth in the following order of
recordation priority and entitlement to payment:

1.   Valid and enforceable liens
upon the property interests of SETO
BALAKIAN in Parcel One, Parcel Two,
Parcel Three, Parcel Four and
Parcel Five only: (except as
noted):

G.   Judgment entered May
19, 1992 by the United
States Bankruptcy Court,
Eastern District of
California in case No.
91-1257 (Seto Balakian)
and No. 91-1258 (Ara and
Virginia Balakian) in
favor of Rose and Melky
Tookmanian, Diana
Tookmanian and Dennis
Balakian, recorded
October 15, 1998 ...
(Lien on interests in
Parcel One, Parcel Two,
Parcel Three, Parcel Four
and Parcel Five only).

Amount of judgment,

[5]Between the time these proceedings commenced and this appeal,
Ara Balakian, Seto Balakian, and Rose Tookmanian have died.  Ara's
interests are now owned solely by Virginia Balakian.  Seto
Balakian's interests are owned by his probate estate.  The
equitable lien and fee interests of Rose Tookmanian have been
acquired by Appellant.

including interest accrued to March 20, 1998, on the Rose Tookmanian and Diana Tookmanian portion of the Judgment as of March 20, 1998 is $986,469.73, with interest accruing thereafter according to law at a daily rate of $155,97 until May 19, 1998 when interred shall be compounded on the amount then due ($994,828.48) and accrue at a new daily rate of $165.44 thereafter according to law.

Amount of judgment including interest accrued to March 20, 1998, on the Dennis Balakian portion of the Judgment as of March 20, 1998 is $835,822.17, with interest accruing thereafter according to law at daily rate of $132.29 until May 19, 1998 when interest shall be compounded on the amount then due ($843,759.57) and accrue at a new daily rate of $140.32 thereafter according to law.

H.   Order Clarifying and Correcting Judgment entered January 12, 1995 by the United States Bankruptcy Court, Eastern District of California, in Case No. 91-1257 (Seto Balakian) and No. 91-1258 (Ara and Virginia Balakian) recorded January 30, 1995 ... No additional sum secured.

11

...

2.  **Valid and enforceable liens upon the property interests of ARA BALAKIAN and VIRGINIA BALAKIAN in Parcel One, Parcel Two, Parcel Three, Parcel Four, Parcel Five ... (except as noted):**

**K.   Judgment entered May 19, 1992 by the United States Bankruptcy Court, Eastern District of California in case No. 91-1257 (Seto Balakian) and No. 91-1258 (Ara and Virginia Balakian) in favor of Rose and Melky Tookmanian, Diana Tookmanian and Dennis Balakian, recorded October 15, 1998 ... (Affects interest in Parcel One, Parcel Two, Parcel Three, Parcel Four and Parcel Five only).**

**Amount of judgment, including interest accrued to March 20, 1998, on the Rose Tookmanian and Diana Tookmanian portion of the Judgment as of March 20, 1998 is $986,469.73, with interest accruing thereafter according to law at a daily rate of $155,97 until May 19, 1998 when interred shall be compounded on the amount then due ($994,828.48) and accrue at a new daily rate of $165.44 thereafter according to law.**

**Amount of judgment including interest accrued to March 20, 1998, on the Dennis**

Balakian portion of the Judgment as of March 20, 1998 is $835,822.17, with interest accruing thereafter according to law at daily rate of $132.29 until May 19, 1998 when interest shall be compounded on the amount then due ($843,759.57) and accrue at a new daily rate of $140.32 thereafter according to law.

L.   Order Clarifying and Correcting Judgment entered January 12, 1995 by the United States Bankruptcy Court, Eastern District of California, in Case No. 91-1257 (Seto Balakian) and No. 91-1258 (Ara and Virginia Balakian) recorded January 30, 1995 ... No additional sum secured.

...

3.   Valid and enforceable liens upon the property interests of DANIEL BALAKIAN in Parcel One, Parcel Two and Parcel Three only: (except as noted):

E. Judgment entered May 19, 1992 by the United States Bankruptcy Court, Eastern District of California in case No. 91-1257 (Seto Balakian) and No. 91-1258 (Ara and Virginia Balakian) in favor of Rose and Melky Tookmanian, Diana Tookmanian and Dennis Balakian, recorded October 15, 1998 ... (Lien on interests in Parcel One, Parcel Two,

13

Parcel Three, Parcel Four and Parcel Five only).

Amount of judgment, including interest accrued to March 20, 1998, on the Rose Tookmanian and Diana Tookmanian portion of the Judgment as of March 20, 1998 is $986,469.73, with interest accruing thereafter according to law at a daily rate of $155,97 until May 19, 1998 when interred shall be compounded on the amount then due ($994,828.48) and accrue at a new daily rate of $165.44 thereafter according to law.

Amount of judgment including interest accrued to March 20, 1998, on the Dennis Balakian portion of the Judgment as of March 20, 1998 is $835,822.17, with interest accruing thereafter according to law at daily rate of $132.29 until May 19, 1998 when interest shall be compounded on the amount then due ($843,759.57) and accrue at a new daily rate of $140.32 thereafter according to law.

F.  Order Clarifying and Correcting Judgment entered January 12, 1995 by the United States Bankruptcy Court, Eastern District of California, in Case No. 91-1257 (Seto Balakian) and No. 91-1258 (Ara and Virginia

14

                        Balakian) recorded
                        January 30, 1995 ... No
                        additional sum secured.

          ...

                        4.  Valid and enforceable liens upon the
                        property interests of ROSE TOOKMANIAN in
                        Parcel One, Parcel Two and Parcel Three only:
                        (except as noted):

          ....

     These second Chapter 11 petitions were dismissed on January

20, 1999.  After the dismissal of these Chapter 11 petitions,

there arose a danger that the County of Fresno and the

Consolidated Irrigation District would foreclose the Properties

because of unpaid real estate taxes.  Appellant purchased the

Tookmanian interests, including Rose Tookmanian's equitable lien

and fee interests in the Properties.  Appellant asserts that he

advanced nearly $445,000 toward discharge of the real property

taxes and advanced further amounts to the County of Fresno,

totaling $581,849.31, and the Consolidated Irrigation District,

totaling $51,238.66, and that the other owners of the Properties

have, through 2006, advanced a total of $10,880.27.[6]

     On May 12, 2000, Appellant filed Adversary Proceedings Nos.

00-1166 and 00-1167 to renew the Judgments entered in 1992.  The

Bankruptcy Court renewed the Judgments on October 10, 2000,

keeping the equitable liens in place:

               Judgment is entered in favor of Plaintiff
               [Appellant], and against the defendants, and

          _____

               [6]These amounts have not been decided in the Bankruptcy Court
          proceedings and will be the subject of proof.

each of them [Seto Balakian, Daniel Balakian, Rose Tookmanian, Ara and Virginia Balakian], as follows:

1.   The judgment of this court filed May 19, 1992 in adversary proceeding numbers 91-1257 and 91-1258, as clarified and corrected by the order filed January 12, 1998 (collectively the 'Judgment'), is hereby clarified.  The court finds and orders that Plaintiff, or any other holder of an equitable lien established by the Judgment, may foreclose upon one or more of the parcels of real property secured by said equitable lien and credit any amounts bid or received from such foreclosure against the obligation secured by the equitable lien while retaining the equitable lien on the other, unforeclosed upon parcels.  Such foreclosure may take place without losing or destroying the equitable lien with respect to other portions of the said real property.  For the purpose of this order, a 'parcel' is defined as any part of the real property secured by the equitable lien which could be separately foreclosed upon if the foreclosing party held a deed of trust rather than an equitable lien established by Judgment of this court.

2.   The Judgment is hereby renewed in accordance with law, for the full term of years allowed any money judgment of this court.

3.   The equitable liens established under the Judgment will retain the same priority upon the real property following renewal of this court's Judgment as they did prior to said renewal.

Appellant moved for the appointment of an equity receiver to enforce the judgment, which motion was granted by Order filed on May 7, 2001, by which the parties eventually agreed on the form of order and who would act as the equity receiver.  The May 7, 2001 "Order Appointing Equity Receiver Under F.R.B.P. Rule 7069", *inter alia,* appointed Henry Wheeler as the Equity Receiver; that

the Receiver "shall immediately have the right to immediately

take control, custody and possession of [the Properties referred

to in the May 7, 2001 Order as the "Property"] for the purpose of

selling said property"; that "Receiver's responsibilities and

duties are limited to selling one or more parcels of the Property

in order to satisfy the judgment of Plaintiff [Appellant]"; and:

> 17.  All sales of one or more of the parcels
> of the Property by the Receiver shall be done
> in the court in the same manner as sales of
> real property under 11 U.S.C. Section 363
> before this court, including but not limited
> to applicable local rules.  Any such sales
> shall be free and clear of liens and
> interests of lien holders and parties of
> interest, including Plaintiff [Appellant],
> Plaintiff's [Appellant's] assignees.
> Receiver shall obtain an order of this court
> authorizing said sales.  Plaintiff may credit
> bid his equitable lien, in whole or in part,
> with respect to any such sales, preserving
> unto himself the amount and value of said
> equitable lien on unsold portions of the
> Property to the extent not paid for the
> parcels offered for sale by the Receiver.

A "Motion for Sale of Real Property by Equity Receiver" and

a "Motion by Dennis Balakian To Permit Release of Virginia

Balakian From Equitable Lien and Excuse Him From Foreclosing on

Her Interests and His Own Under the Equitable Liens" were filed.

Judge Rimel heard arguments on the merits of these motions

on March 23, 2007.  On May 9, 2007, Bankruptcy Judge Rimel placed

on the record her findings of fact and conclusions of law with

respect to these motions:

> Now I'm going to put on the record my
> findings of fact and conclusions of law with
> respect to these matters.  And in this case,
> in these adversary proceedings and these

17

1  motions, there's been a great deal of
contention about how these - this equitable
2  lien or these equitable liens can be
foreclosed on or executed and the property be
3  sold to pay the equitable lienholder.  There
are disputes about how that should happen and
4  in what court it should happen.

5  This Court has previously ruled that it's
appropriate for it to happen in this Court.
6  The equity receiver was appointed by this
Court.  No appeals were filed.  It's not -
7  the equity receiver is in pursuit of aid of
enforcement of a judgment.  The judgments
8  were entered in this Court.  And the prior
orders that are very relevant and that inform
9  this Court's decision here today are the
orders entered by Judge Ford in May 1992 and
10  the order entered by Judge Dorian in May of
1998 and orders entered by this Court in 2000
11  and - well, in 2000 and 2001.

12  And just so that we'll all ... understand the
background, in prior Chapter 11 cases filed
13  by Seto Balakian and Ara and Virginia
Balakian, there were liens on certain - a
14  deed of trust on certain property held by the
Bank of America.  The Bank of America was
15  about to foreclose.

16  And to prevent that foreclosure, the
Tookmanian family made certain payments to
17  the Bank of America and Dennis Balakian made
certain payments to the Bank of America.  As
18  a result of those payments, they - there was
- adversary proceedings were commenced in -
19  adversary proceedings were commenced before
Judge Ford in 1991, as a result of which
20  equitable liens on the Balakian ranches were
established in favor of the plaintiffs.

21
  And as a result of that, of Judge Ford's
22  order, he was persuaded that the owners of
the Balakian ranches, who were signatories to
23  the Bank of America loan and subsequent
agreement, intended that there be and
24  consented to a replacement lien to any party
advancing funds for the specific purpose of
25  retiring the Bank of America loan, which the
Tookmanians and Dennis Balakian had, in fact,
26  done.

Judge Ford also stated, and this order was never appealed, without any specific promissory note to specifically enforce, there cannot be any provision for attorneys' fees and costs.

Judge Ford's judgment stated that the Tookmanians were entitled to an equitable lien with a value of five hundred eighty thousand plus interest at the legal rate of ten percent commencing May 3rd, 1990, and that Dennis Balakian was entitled to an equitable lien in the amount of five hundred thousand dollars plus interest at the legal rate of ten percent commencing July 13th, 1990.

Judge Ford's order went on to describe how a writ of execution was to issue.  That never happened.  The party - the plaintiffs never - for reasons that have been described to the Court - never went through with an execution sale.  The order provided that each equitable lienholder had the right to credit bid at an execution sale, and that the sale could be advertised - either of the equitable lienholders or any of the debtors may advertise the sale in accordance with California Code of Civil Procedure Section 701.555.

Subsequently, after another dispute, there was an adversary proceeding resulting in a partial judgment adjudicating the nature, extent, validity, and priority of liens and amount of liens and determining ownership interest in real property.

And that order is also very relevant to this Court's decision.  And that order was signed by Judge Dorian.  It determined who owned the various parcels of the Balakian ranch, and it also set forth the existing liens - was a declaratory judgment with respect to the existing liens and the extent and priority of the equitable liens in favor of the Tookmanians and Dennis Balakian.  It also described the amount as of May 19th, 1998, of the - each equitable lien as it had accrued interest.

19

And so, at the time after that - after that
time, there were five parcels.  There was the
Newmark Ranch, which was owned thirty-one
percent by Ara and then Virginia - or his
probate estate and Virginia, thirty-one
percent owned by Daniel, thirty-one percent
owned by Seto, which then went to his probate
estate when he died, and seven percent by
Rose Tookmanian who, it eventually became
clear in the progress of these hearings, had
transferred her interest to Dennis.

There's a parcel two, the Manning Ranch, held
in the same way.

Parcel three, Manning 1, forty-two percent
held by Ara and then Virginia, forty-two
percent held by Daniel, and eight percent
held by Seto, and then to the probate estate
of Seto, and eight percent by Rose.

Parcel four, the South Ranch, fifty percent
of which was held by Ara, then Virginia,
fifty percent held by Seto and then the
probate estate.

And parcel five, the Zedikers ... Ranch,
fifty percent held by Ara and then Virginia,
and fifty percent held by Seto and then the
probate estate.

So, the question is, then, how can Dennis
Balakian who now holds his lien and the
Tookmanian lien realize on these liens.  And
what he has asserted is two things, both of
which the other family members who hold
interest in this property [sic], contest.

First of all, Dennis Balakian has asserted,
'I should be able to get a deed in lieu of
foreclosure from my mother, Virginia
Balakian, or foreclose on her' - or 'I should
be able to get a deed in lieu of her property
and not have to foreclose on her interest.
What I should be able to do with this
property' - there are five parcels, and
they're held in various ownership percentages
by various people, all of whose interests are
subject to this lien - is, 'I should be able
to foreclosure [sic] on the interests of Seto
Balakian and not the others because I want to

20

1   preserve the property, and that's the best
    way to do it.'
2
    So, the Seto Balakian probate estate has
3   opposed that, as has Daniel Balakian.

4   And it's useful to look at the - it's useful
    to look at the law of merger and the general
5   law with respect to title and deeds of trust.
    Everybody in this proceeding has said that
6   really these equitable liens replace a deed
    of trust and ought to be considered the same
7   as a deed of trust.  To some extent, that's
    true.  To some extent, it's not true.
8
    The equitable liens are not deeds of trust in
9   that they don't have - there's nothing
    written other than the two, or now four,
10  bankruptcy court orders that describe the
    equitable liens.  So there are no written -
11  there's no written documentation by the
    parties that we can go to to look at the
12  intent in establishing the equitable liens.
    We have these four court orders instead.
13
    Also, there's not a whole history of case law
14  interpreting deeds of trust and the
    provisions and meanings of deeds of trust
15  under California law with respect to
    equitable liens.  But, nonetheless, the
16  equitable liens are - can be interpreted by
    analogy to deeds of trust, and we'll describe
17  that more in a minute.  So the prior orders
    establish that the equitable liens are on the
18  interests that I've described in these five
    parcels of property.
19
    Pursuant to Judge Ford's earlier order, this
20  Court finds that the equitable liens include
    interest but do not include attorneys' fees
21  or costs.  They also do not include
    subsequent advances for taxes.  And that's
22  just - by looking at the language of the
    order, they include the principal paid to the
23  Bank of America and the interest that accrued
    at the rate set forth in those prior orders
24  since then.

25  However, the order that this Court entered in
    May 2001 appointing the receiver does make it
26  clear that the receiver may get paid for his

                            21

services and, additionally, that he may
retain an attorney or other assistants to -
to aid him.   So certainly the receiver and
the receiver's attorney, reasonable
attorneys' fees and disbursements would be
subject to the equitable liens in question.

Also, the order entered by this Court says
that 'any sale of the property by the
receiver shall be pursuant to Bankruptcy Code
Section 363.  All sales of one or more
parcels of the property by the receiver shall
be done in the court in the same manner as
sales of real property under Section 363
before this Court, including but not limited
to applicable local rules.  Receiver shall
obtain an order of the court authorizing said
sales.'

So, there is a prior order of this Court that
was a final - as far as a bankruptcy court
order while a case is still pending is ever a
final order or it's a final order, it was
never appealed.  And that describes that the
sale should be done under Section 363.

The equitable lien - the Court also concludes
that the receiver may not sell just Seto's
interest in the property.  The equitable lien
covers all five parcels of real property and
all the interests in it.  The Court is
persuaded that if Dennis Balakian has the
Tookmanians' - Rose Tookmanian's interest in
the real property [sic] or if he obtains his
mother's interest in the real property [sic]
through a deed in lieu of foreclosure, no
merger takes place, and that interest is
still subject to the equitable lien.  It's
simply, and I'm going to expand on this
somewhat, not fair to the other co-owners
whose interest would be foreclosed on to
foreclose on just one person's portion of the
property.

Additionally, under Section 363 of the
Bankruptcy Code, the goal here is to get the
highest price, and the highest price does not
result in selling a partial interest in real
property.  It results in selling the entire
interest in real property.  So the property
needs to be sold parcel by parcel.  In other

22

words, you can sell parcel one first or parcel two first, but you can't sell Seto Balakian's interest and no one else's.

A simple look at real property law makes it clear why this is the case.  And, again, I said that deed of trust law was applicable by analogy, and I think it is.  There's been a great deal of confusion about what property interests are subject to the equitable lien.

And looking at Miller and Star [sic] California Real Estate is really helpful here and - with respect to what interest in property may serve as security for a deed of trust and, by analogy, to an equitable lien.  And any interest in real property that is transferable may serve as the security for a deed of trust.  The lien of a deed of trust can attach to the separate interest of a tenant in common or a joint tenant.  In this instance, the liens of the - the equitable lien attaches to the interests of each of these co-tenants.

Looking at the doctrine of merger with respect to deeds of trust is also helpful.  The doctrine of merger provides that whenever a greater estate and a lesser estate in the same parcel of real property are held by the same person without an intermediate interest or estate, the lesser estate generally merges into the greater estate and is extinguished.  I'm looking at Section 10.41.

However, the doctrine of merger is not applied when it's inequitable.  It's not applied when it results in an injury, injustice, or prejudice to a third person.  And whether or not there's a merger depends on the intention of the parties, and it also depends on whether it's inequitable.  If it is inequitable, there would be no merger.

In this instance, I have to say that I think it sends us all back to property classes in law school.  And I'm going to give you a hypothetical that describes the reasons for the - or helps illustrate, perhaps, the reasons for the Court's conclusions here.

Imagine that there is real property named
'Black acre.' ... John owns thirty-three
percent of Black acre, Fred owns thirty-three
percent, and Matt owns thirty-three percent -
well, thirty-three and a third percent.  So
Black acre is one-third owned by John, one-
third owned by Fred, and one-third owned by
Matt.

John, Fred, and Matt all give a deed of trust
on Black acre to Mary.  Mary then transfers
that deed of trust to Sam.  Sam maybe pays
off Mary, and she doesn't - she transfers the
deed of trust to Sam.  Then Fred ...
transfers his one-third interest in Black
acre to Sam.

Now, it wouldn't be fair to John and Matt if
Sam were to say, 'Look, I'm still owed
everything I was - I was already owed and I'm
going to foreclose on your interest in Black
acre but not on my own interest in Black acre
because, in fact, my portion of the deed of
trust merged with the property I now own.'

It's a very similar circumstance here.  It
simply would not be equitable for Dennis
Balakian to be able to foreclose solely on
Seto Balakian's portion of the property and
not on Virginia Balakian's portion of the
property or on the Tookmanian - what was the
Tookmanian portion of the property.

The motion of Dennis Balakian with respect to
the - being allowed to take a deed in lieu -
or allowed to get - not to have to foreclose
on his mother's portion says, 'well, there
could be contribution.'  Well, certainly
there could be contribution, but that's after
the fact, not before the fact.

It would also be possible to value the
interests of each of these co-owners and
apply the value of the interest of everybody
but Seto Balakian to the deed of - to the
equitable lien and so reduce the amount of
the equitable lien that was being credited -
bid against the Seto Balakian portion of the
property.  And I considered that as a
possibility.  Certainly the parties could
agree to that as a possibility.

1   But I'm not going to order that because, in
    the Court's view, that would add - first of
2   all, we would then have the battle of
    appraisals here, which would not be in
3   anybody's best interests.  We would have
    appraisers testifying about what the value of
4   interests of - in undivided real property is,
    which, as everybody knows, is not going to be
5   the same as if you - you know, the whole -
    the value of a thirty-three percent interest
6   in real property is not thirty-three percent
    of the value of the entire property.
7
    And so, for all these reasons, the Court is
8   persuaded that the manner of sale of the
    property subject to the equitable lien must
9   be pursuant to Bankruptcy Code Section 363.
    It must be by parcel - in other words, there
10  are five parcels.  It can be done in any
    order that is calculated to bring the highest
11  possible return.  It must be of all the
    interests of the co-owners of that particular
12  parcel.  It must be advertised, and it must
    be - the Court must be persuaded that it's
13  the highest and best sale for the property.

14  That is going to require Mr. Wheeler to
    figure out - as receiver, he's got the
15  fiduciary duty to do this.  What is the - you
    know, is the best way to do this by
16  advertising it?  Is the best way to do it by
    asking the Court to appoint an auctioneer?
17  How is the best way to do this?  And to
    request Court approval for all of this as he
18  goes along.

19  The Court is not, right now, going to say
    there will be an auction sale in this Court
20  two months from today of this property.  The
    sale has to be pursuant to 363.  It has to be
21  noticed to everybody concerned, which is
    certainly all the lienholders, but it also
22  has to be a sale that is calculated to bring
    the best price, as a sale under Section 363
23  would be.

24      ...

25  And the court will issue a minute order with
    respect to all of this.
26

25

1    And just to put - make it clear what the
     minutes should say, item one in the - item
2    one in the Seto Balakian case and item 3 in
     the Ara and Virginia Balakian case on page
3    ten, the motion is granted, subject to
     findings of fact and conclusions of law as
4    set forth on the record; sale to be pursuant
     to Bankruptcy Code Section 363 and of all the
5    co-owners of any particular parcel - interest
     in the parcel.

6
     As to the motion - item two and item four,
7    Dennis Balakian's motion to permit release of
     Virginia Balakian from equitable lien, that
8    motion is denied for the same reasons - or
     for the reason set forth in the Court's
9    findings of fact and conclusions of law.

10   On May 15, 2007, Bankruptcy Judge Rimel filed an "Order on

11   Motion for Sale of Real Property by Henry Wheeler, Equity

12   Receiver", ordering in pertinent part:

13                Pursuant to the findings of fact and
                  conclusions of law stated on the record on
14                May 9, 2007, the court orders as follows:

15                1.   The equitable liens consist of the
                  principal amount of the liens plus interest
16                accruing at the rate set forth in the 1992
                  Order.  The equitable liens do not include
17                any attorneys' fees or costs or advances by
                  the equitable lienholders.

18
                  2.   The receiver shall sell the real property
19                subject to the equitable liens by Parcels, or
                  all five Parcels together.  The receiver must
20                sell all the interests of the co-owners in a
                  particular Parcel at the same time.  The
21                portion of the motion that requests that the
                  receiver sell the interests of Seto Balakian
22                or Seto Balakian's probate estate first is
                  denied for the reasons set forth in the
23                findings of fact and conclusions of law.

24                3.   As set forth in the order of this court
                  entered May 10, 2001, the receiver shall sell
25                the property pursuant to Bankruptcy Code §
                  363.  The sale of the five Parcels may be in
26                any order that the receiver determines is

26

most likely to obtain the highest and best
price.  All five Parcels need not be sold if
sale of fewer that the five Parcels is
sufficient to pay the equitable liens.

4.  Dennis Balakian, or any other holder of
an equitable lien, may credit bid the amount
of the equitable lien at the sale.

5.  The receiver has the discretion to
determine the best way for the sale to occur.
The receiver may, subject to court order,
retain an auctioneer or a real estate broker
in connection with the sale.

6.  The receiver shall advertise the sale in
the same manner as a trustee appointed under
Bankruptcy Code § 701, 702, or 1104 would
advertise a sale of property of a bankruptcy
estate pursuant to Bankruptcy Code § 363.

Also on May 15, 2007, Bankruptcy Judge Rimel filed an "Order on

Motion of Dennis Balakian to Permit Release of Virginia Balakian

from Equitable Lien and To Excuse Him from Foreclosing on Her

Interests and His Own Under the Equitable Liens," ruling:

... Pursuant to those findings of fact and
conclusions of law, the court orders as
follows:

1.  As set forth in the order granting the
motion of the receiver for sale of the
property subject to the equitable liens, the
sale of property pursuant to the equitable
liens shall be by way of parcels, not by way
of individual interests in those parcels.
Therefore, Dennis Balakian's request that 'he
not be required to foreclose on his own
interests in the Property' is denied.  Dennis
Balakian's request that 'he not be required
to foreclose on the interests of Virginia
Balakian' is denied.

2.  For the reasons set forth by the court in
its findings of fact and conclusions of law,
Dennis Balakian may not accept a deed in lieu
of foreclosure from Virginia Balakian that
attempts to credit a portion of the equitable

27

lien to that deed in lieu of foreclosure.

D. **DID THE BANKRUPTCY COURT ERR IN REQUIRING THE RECEIVER TO SELL THE PROPERTIES ON A PARCEL-BY-PARCEL BASIS?**

1. **Requiring the Sale of Appellant's Own Fee Interest in the Properties as a Condition to Selling Any Part of the Properties**.

Appellant argues that the Bankruptcy Court's rational for her conclusion is incorrect.  Appellant argues that the Bankruptcy Court's reliance on merger law, based on the assumption that the Tookmanian fees interests acquired by Appellant in 2000 were subject to the equitable liens, was incorrect.  Appellant refers to Judge Dorian's 1998 judgment, contending that an examination of Judge Dorian's judgment shows that the interests of Rose Tookmanian in the Properties were not made subject to the equitable liens, at least by omission:

> In other words, Rose's property interests (which are now owned by [Appellant]), totaling approximately 8 acres on Parcels One through Three, are not subject to any of the debt or liens.  They cannot be sold through a foreclosure of the equitable liens in any event since these liens do not attach to those interests.  This means that the equitable liens are not a lien against the five parcels as a block.  Nor are the liens even liens against all the interests within the five parcels, because Rose's interests (now owned by [Appellant]) are excepted.  The Receiver lacks any power to sell those interests at all.

Appellees contend that Judge Ford's 1992 judgment "specifically found that all co-owners 'consented to imposition of the equitable lien.'"  Appellees assert that Judge Dorian's

28

1998 judgment "clarified the 1992 judgment and concluded the equitable lien is also against the interests of all co-owners, except Rose."  Appellees argue:

> [Judge Rimel] had jurisdiction to order a sale of the Property, not just Seto's interest.  Once the sale is consummated there will be need for a determination as to the value of the interest of Rose that was assigned to Appellant.  The holder of this interest would receive the value of the interest.
>
> Since Rose consented to the equitable lien on the Property (remember the Bank of America deed of trust was against all five parcels) and since Appellant took an assignment of Rose's interests with full knowledge the equitable lien was impressed against the Property, Appellant should not be heard to complain that the Property must be sold.

Appellant replies that there is no language in Judge Ford's 1992 judgment that all of the co-owners "consented to imposition of the equitable lien."  Appellant notes that Judge Ford ruled that "an equitable lien does exist in favor of Rose and Melky Tookmanian, Diana Tookmanian, and Dennis Balakian", but does not state that Rose's interest is imposed with the equitable lien or that the equitable lien encumbered all of the interests in the Properties.  Appellant's argument is disingenuous; Judge Ford specifically found that "*all the owners* of the Balakian Ranches who were signatories to the Bank of America loan and subsequent Agreement intended that there be and consented to a replacement lien to any party advancing funds for the specific purpose of retiring the Bank of America loan." [Emphasis added].  From this finding it is readily inferrable that all co-owners consented to

29

imposition of the equitable liens."  Of necessity, both the Tookmanian and Dennis Balakian liens applied to all of the Properties.

Appellant notes that Judge Dorian's 1998 judgment does not list the 1992 equitable liens against Rose's interests in the Properties.  Appellant argues that there can be no lien without a debt:

> Although the Bank of America held deeds of trust on all of the Properties, and the Tookmanians and Appellant advanced the money to pay it off, this does not automatically mean that Rose owed a debt arising out of the payment to the Bank of America, the way the other co-owners did.  Certainly, she did not owe a debt to herself, or her husband (Melky), or her daughter (Diana Tookmanian). So, she held no equitable lien against her own interest in the Properties.  And, given the fact that she and her family had advanced thousands of dollars to assist the Balakians, Appellant asserted no debt against her and thus, no lien either.  Judge Dorian's 1998 judgment is the proof ... Were it otherwise, Rose's property interests would have been subject to Appellant's equitable lien, and Judge Dorian would have so found.
>
> There never having existed an equitable lien against the property interests which Appellant holds, the Receiver cannot sell those interests.

As a matter of real property law, Rose Tookmanian's undivided interest in the three parcels were subject to Appellant's equitable lien for the money he advanced to pay off one-half of the Bank of America debt, at least in 1992.  Without the legal and factual basis for Judge Dorian's 1998 judgment, it is not possible to ascertain his intent in omitting to list

30

1  Appellant's equitable lien against her undivided interests.

2  Although it was represented at the hearing that, during mediation

3  involving Appellant's acquisition of Rose Tookmanian's interests,

4  the equitable lien on her undivided interests was taken into

5  account in determining the purchase price, these representations

6  involve matters outside the record.  It is unfortunate that the

7  passage of time, the intervening retirement of Bankruptcy Judges

8  Ford and Dorian, and the intervening deaths of parties and

9  attorneys have caused significant confusion.  Nonetheless, Judge

10  Dorian's 1998 judgment is long final.  Although it is

11  inconsistent with Judge Ford's 1992 judgment, Judge Dorian's

12  omission of the equitable lien in favor of Rose Tookmanian, who

13  advanced money to protect her undivided interests in the parcels

14  cannot have been an oversight, nor is there jurisdiction for

15  modification of Judge Ford's 1992 judgment.  However, Appellant

16  wants to sell only the undivided interests now owned by Seto's

17  probate estate and/or heirs in each of the parcels, but not his

18  mother's.  This is in express violation of Judge Rimel's ruling

19  that the five parcels which are held in undivided co-tenancies,

20  cannot be individually divided for separate sale; rather any

21  parcel encumbered by equitable liens to be enforced by execution

22  sales, shall can only be sold parcel by parcel in the most

23  economically advantageous order to maximize recovery.[7]

24  _____

25  [7]Appellant did not raise any marshaling of assets arguments
   under Civil Code §§ 2989, 3433.  Whether the "two fund" or "inverse
26  order of alienation" rules have any applicability need not be
   addressed and the parties did not raise the issue in the Bankruptcy

1        Appellant's appeal on this issue is DENIED.

2            2. **Equity Receiver Must Proceed Under 11 U.S.C. § 363**.

3        Appellant argues that the Bankruptcy Court erred in ordering

4   that "[a]s set forth in the order of this court entered on May

5   10, 2001, the receiver shall sell the property pursuant to

6   Bankruptcy Code § 363."  Appellant notes that Judge Rimel's

7   "Order Appointing Equity Receiver Under F.R.B.P. Rule 7069" filed

8   on May 10, 2001 provided that "[a]ll sales of one or more of the

9   parcels of the Property by the Receiver shall be done in the

10  court in the same manner as sales of real property under 11

11  U.S.C. Section 363 before this court, including but not limited

12  to applicable local rules."

13       Appellant argues that "[t]he distinction is critical."

14  Appellant asserts that the Receiver is not a bankruptcy trustee

15  or debtor-in-possession; there are no existing bankruptcy

16  estates.  Therefore, Appellant contends, the Properties are not

17  "property of the estate" within the meaning of 11 U.S.C. §

18  363(b)(1): "The trustee, after notice and a hearing, may ... sell

19  ... property of the estate."  Section 363(h) provides in part

20  that "the trustee may sell both the estate's interest, under

21  subsection (b) or (c) of this section, and the interest of any

22  co-owner in property in which the debtor had, at the time of the

23  commencement of the case, an undivided interest as a tenant in

24  common, joint tenant, or tenant by the entirety."

25  _____

26  Court.

Appellant argues that the courts have interpreted the power to sell interests of non-debtors narrowly, citing *In re Calvary Temple Evangelistic Ass'n,* 47 B.R. 520, 522 (Bankr.D.Minn.1984)("No cases have allowed a creditors' committee to proceed with a sale of property free and clear of liens under 11 U.S.C. § 363"); *Geddes v. Livington*, 804 F.2d 1219, 1223 (11th Cir.1986)("This plain language of [Section 363(h)] forces the conclusion that the three cotenancies are the only three in which the co-owner's interest may be sold without his consent").[8] Appellant also cites cases holding that the bankruptcy courts lack jurisdiction to sell property post-confirmation under Section 363, where jurisdiction is not retained for that purpose, *In re Golf*, 322 B.R. 874, 877 (Bankr.D.Neb.2004), and that "[a] bankruptcy court's jurisdiction does not extend to property not in the debtor's estate." *Rutherford Hospital, Inc. v. RNH Partnership*, 168 F.3d 693, 699 (4th Cir.1999).

Relying on these authorities Appellant argues:

> In the present case, where there is no estate, no trustee, and no property of the estate, the bankruptcy court has no power under Section 363.  The 2000 [sic] order did not say that it had such power; it merely said that the Receiver would proceed *in the*

---

[8]Appellant cited *In re Van Houten*, 56 B.R. 891 (Bankr.W.D.Mich.1986) as holding that a trustee could not sell the life estate of a non-debtor.  However, the District Court noted:

> Section 363(h) might arguably also apply.  However, as neither party addressed the issue, and as it is far from certain that § 363(h) would apply to a remainderman, the opinion does not consider this question.

33

> **same manner**, which included notices,
> requesting court authorization, and the like.
> The court, however, could not confer on the
> receiver the powers in Section 363(h).   For
> this reason, too, the Receiver could not sell
> the fee interests of Appellant, as those
> interests were not subject to the equitable
> liens.

Appellant's attempt to make a distinction between Judge Rimel's order that the Properties be sold "pursuant to" rather than in the "same manner" as Section 363 is artificial, as Appellees contend, "much to do over nothing."  The May 15, 2007 Order does not impose the substantive law of Section 363 on a nonbankruptcy sale because there is no pending Bankruptcy case. As Appellees assert, "[a] fair reading of the transcript will show that the trial court viewed the Order as an Order to the Equity Receiver in and of enforcement of a judgment."  This conclusion is supported by Judge Rimel's comments on May 9, 2007 that the Receiver's requested sale of Seto's interests only to satisfy the equitable liens was unfair or inequitable.  Appellees rejoin:

> Instead of giving the Equity Receiver what he
> asked for the trial court determined what he
> asked for was unfair and granted the Equity
> Receiver's motion for authority to proceed
> with a sale, but treated the motion as a
> petition for instructions and set conditions
> on how the sale is to proceed and made court
> supervision a requirement.

Judge Rimel was correct to establish reasonable, due process procedures for the execution sale.  In a hearing held on January 31, 2007, Judge Rimel noted that the Equity Receiver was appointed pursuant to F.R.B.P. 7069, which incorporates

F.R.Civ.P. 69, that "process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise."

Fed.R.Civ.P. 69 adopts state law for the administration of provisional remedies.  The procedures governing execution sales are by provided by California Code of Civil Procedure §§ 680.010 - 724.260.  Because the procedural notice and sale provisions of Section 363 are consistent with state law, Judge Rimel did not exceed her authority in prescribing the method and procedures for sale, as an adversary proceeding is currently in progress.  The March 23, 2007 transcript of proceedings on the motion for sale of real property and the motion for sale of real property by the Equity Receiver, establishes that Appellant understood that the references to Section 363 were for the purpose of setting a procedural framework for the execution of judgment sales:

> So far as the order itself, that is, the order concerning the appointment of the equity receiver and equitable receiver order, is an interim order.  This is not a final order in the sense of - this is a procedural order, if you will.  I'm not sure that the appointment of the equity receiver would have been appealable as such.  That's not a question, really, before the Court, but I - I think the Court gets my drift here.
>
> The Court, under the rules appointing receiver, has full powers to change its mind, decide what it wants to do, and give those orders to the equitable receiver - to the receiver.  So there's nothing that - if the order says something which it shouldn't say or - it can be changed on that order.  I'm not talking about the other orders, which are final.

The May 15, 2007 Order simply granted the Equity Receiver's request that he be permitted to proceed to enforce the judgment by execution sale and gave instructions, by analogy to Section 363 procedures.  Because, pursuant to F.R.B.P. 7069 and as agreed by Appellant during the March 23, 2007 hearing, Judge Rimel had the power to establish the procedures by which the judgment would be enforced, Judge Rimel did not err by referencing the procedures allowed by Section 363.[9]

Appellant's appeal on this issue is DENIED; the Bankruptcy Judge's decision is AFFIRMED

### 3.   Providing Procedural Directions to the Receiver to Override Appellant's Substantive Rights.

Appellant argues that Judge Rimel's May 10, 2001 Order appointing the Equity Receiver "cannot override the rights established under its judgment renewing the equitable liens entered on October 10, 2000."  Appellant contends that "the bankruptcy court in the matter on appeal gave precedence to the appointing order and overrode the judgment establishing Appellant's substantive rights."

Although 11 U.S.C. § 105(b) precludes appointment of a receiver "in a case under this title," Section 105(b) does not preclude appointment of a receiver in an adversary proceeding to foreclose a lien, *see In re Cassidy Land and Cattle Co., Inc.*,

---

[9]If Appellant was confused by the wording of the May 15, 2007 Order relative to the 2001 Order, all he had to do was move Judge Rimel for clarification.

836 F.2d 1130, 1133 (8th Cir.1998).  Appellant asserts that

"[s]uch cases are rare, ... so there is little precedent on the

interplay between state law (applicable to equity receivers in

bankruptcy cases under F.R.B.P. Rule 7068 [sic]) and general

bankruptcy law."[10]

Appellant cites *Lesser & Son v. Seymour*, 35 Cal.2d 494, 499

(1950):

> We are satisfied that a court in an equity
> proceeding has the power to change the manner
> of sale of property in its custody by a
> receiver appointed by it from that previously
> prescribed by it in the order directing the
> sale, and in that connection may make the
> sale itself although the prior order called
> for it to be made by the receiver.  *In
> effect, the directions in the order of sale
> with regard to the manner in which it should
> be made, are merely instructions to the
> receiver - his procedural directions.  They
> do not go to the substantive rights.*

(Emphasis added).

The October 10, 2000 judgment provided in relevant part:

> Judgment is entered in favor of Plaintiff
> [Appellant], and against the defendants, and
> each of them [Seto Balakian, Daniel Balakian,
> Rose Tookmanian, Ara and Virginia Balakian],
> as follows:
>
> 1.  The judgment of this court filed May 19,
> 1992 in adversary proceeding numbers 91-1257
> and 91-1258, as clarified and corrected by
> the order filed January 12, 1998
> (collectively the 'Judgment'), is hereby
> clarified.  The court finds and orders that
> Plaintiff, or any other holder of an

---

[10]Appellant's reference to F.R.B.P. 7068 clearly is a typographical error.  F.R.B.P provides that "Rule 68 F.R.Civ.P. applies in adversary proceedings."  F.R.Civ.P. 68 pertains to "Offers of Judgment."

> equitable lien established by the Judgment,
> may foreclose upon one or more of the parcels
> of real property secured by said equitable
> lien and credit any amounts bid or received
> from such foreclosure against the obligation
> secured by the equitable lien while retaining
> the equitable lien on the other, unforeclosed
> upon parcels.  Such foreclosure may take
> place without losing or destroying the
> equitable lien with respect to other portions
> of the said real property.  *For the purpose
> of this order, a 'parcel' is defined as any
> part of the real property secured by the
> equitable lien which could be separately
> foreclosed upon if the foreclosing party held
> a deed of trust rather than an equitable lien
> established by Judgment of this court.*
>
> ...
>
> 3.   The equitable liens established under the
> Judgment will retain the same priority upon
> the real property following renewal of this
> court's Judgment as they did prior to said
> renewal.

(Emphasis added).

Appellant contends that, as a result of the October 10, 2000 judgment, his right to foreclose upon any portion of the Properties is regulated by the law of trusts.  Appellant asserts that the law governing deeds of trust permits the holder of a security interest on multiple pieces of property with multiple owners to proceed against the interest of one owner alone. Appellant cites *Noble v. Beach*, 21 Cal.2d 91, 94 (1942), holding that a purchaser at an execution sale of interest of one of several devisees in land acquires an undivided fractional interest therein, as well as several ancient California cases for the proposition that "[i]f the equitable liens were against the interests of Seto Balakian alone, the Receiver (or a U.S.

1  Marshall [sic]) could clearly sell those interests alone."

2  Appellant argues:

> The bankruptcy court [Judge Rimel] ignored
> the specific language in the October 2000
> judgment.  Instead of interpreting the
> language in that order, she stated that the
> equitable liens 'are not deeds of trust' but
> that they 'can be interpreted by analogy to
> deeds of trust.' ... By applying her theory
> of merger of title, she precluded Appellant
> from releasing his mother's interests from
> any foreclosure (and erroneously required his
> own interests to be foreclosed). ....

9  Appellant contends that Judge Rimel's theory of "merger of

10  title" depends on a transfer of property by the debtor to the

11  creditor.  However, Appellant contends, he did not ask that his

12  mother, Virginia, be permitted to transfer her fee interests to

13  him; rather, he asked the Bankruptcy Court to permit him to

14  release her.

15  Appellant cites 4 Miller & Starr, California Real Estate §

16  10:119 (3rd Ed.), to argue there are no statutory provisions

17  either permitting or prohibiting partial releases of deeds of

18  trust.  "On a partial release, the lot or parcel is free and

19  clear of the lien of the trust deed, and the remaining parcels

20  are encumbered for the full remaining balance of the obligation."

21  *Id.* at 365.  Appellant also cites *Williams v. Reed*, 113

22  Cal.App.3d 195, 202 (1952):

> Section 1543 of the Civil Code provides that
> "A release of one of two or more joint
> debtors does not extinguish the obligations
> of any of the others, unless they were mere
> guarantors; nor does it affect their right to
> contribution from him.'  This section
> 'provides in effect that the joint debtor who

39

accepts a release shall be held to have
consented that the liability of his joint
debtor should be continued together with his
own liability to contribution.' ....

Relying on this authority, Appellant argues:

Appellant ... would be free to provide a
release to his mother.  Nothing in law
prevents it and, as Miler [sic] & Starr
notes, a partial release for her benefit
would not impair Appellant's rights to the
remainder of the interests in the Properties.
Following said release, and given that his
own fee interests were not subject to the
equitable liens at all, only the interests of
the other owners would be subjected to the
equitable liens.  The Receiver could then
foreclose on those interests.

In relying on the doctrine of merger of
title, the bankruptcy court did not consider
that Appellant was asking only that he be
permitted to release his mother's interests.
He requested such permission, rather than
acting unilaterally, because had he acted
unilaterally the other landowners would have
insisted that he had waived his rights
against them.

The language of the October 2000 order, and
the applicable law concerning partial
releases of security interests, permitted
Appellant not to proceed against his mother.
The equitable liens did not even apply to his
own fee interests acquired from Tookmanian.
As a result, the bankruptcy court erred in
requiring the Receiver to proceed against all
the fee interests, and the orders of that
court must be reversed.

Appellant's reliance on the law pertaining to deeds of trust
is entirely misplaced as the equitable liens are not deeds of
trust.  After the Bank of America was paid off in full all deeds
of trust were exonerated by reconveyances.  Appellant is mixing
apples and oranges.  An old California Supreme Court case, *Bee v.*

40

*Cooper*, 217 Cal. 96, 101 (1932), states that Section 1543, "by its very language, has application only to contractual obligations and not to the obligations of joint tort-feasors." Here, the equitable liens are not based on contract, as Judge Ford specifically found.  Although Judge Rimel referred to the law of deeds of trust by analogy, Appellees correctly contend she did not abuse her discretion in ruling that Appellant's request was inequitable and that a parcel by parcel sale was equitable. More importantly, a release clause in a deed of trust is not universal unless a writing specifically provides authority to separately release part of the security for the debt upon payment of a specified per acre price or other defined consideration. There is no deed of trust.  There is no release clause applicable to the equitable liens.  Appellant is not entitled to piecemeal, selective releases of a portion of the real property from the equitable liens that encumber the entirety of the five parcels.[11]

Appellant's appeal on this issue is DENIED.

**E. DID THE BANKRUPTCY COURT ERR IN FAILING TO PERMIT APPELLANT TO INCLUDE TAXES, ATTORNEYS' FEES AND COSTS IN HIS CREDIT BIT OF THE EQUITABLE LIENS?**

**1.   Equitable Subrogation Permits Appellant to Include in His Credit Bid the Amount of Taxes Paid.**

---

[11]**Further, a release must be supported by consideration. *See* 4 Miller & Starr, California Real Estate § 10:120.  Appellant presented no evidence to the Bankruptcy Court that his motion for release of Virginia's undivided interests in the parcels was supported by consideration.**

Appellant correctly argues that the Bankruptcy Court erred by denying his request to add the amounts of real property taxes he paid on the Properties to the County of Fresno and the assessments to the Consolidated Irrigation District.  Appellant satisfied all of the requirements under California law for equitable subrogation.  *See Caito v. United California Bank*, 20 Cal.3d 694, 704 (1978):

> One who claims to be equitably subrogated to the rights of a secured creditor must satisfy certain prerequisites.  These are: '(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer.  (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid.  (5) Subrogation must not work any injustice to the rights of others.'

"The California courts have applied this doctrine liberally." *Han v. United States*, 944 F.2d 526, 529 (9th Cir.1991).

Appellant meets these criteria because he made the payments to prevent the taxing authorities from taking the Properties; he did not act as a volunteer because of his very sizeable equitable lien on the Properties; as a secured creditor, he was not liable for the taxes; and there will be no injustice in permitting him to recoup these amounts as the other co-owners benefitted from non-enforcement of the tax liens.  Further, California Civil Code § 2876 provides:

> Where the holder of a special lien is compelled to satisfy a prior lien for his own protection, he may enforce payment of the amount so paid by him, as a part of the claim for which his own lien exists.

"'The effect of section 2876 is to give to the holder of a special lien who is compelled to satisfy any prior lien for his own protection the right to add the amount so paid to the amount for which his special lien was security and to enforce both together.'" *Little v. Harbor Pacific Mortgage Investors*, 175 Cal.App.3d 717, 720 (1985).  "[S]uch advances, in the absence of express agreement or provision to the contrary, bear interest at the legal rate from the date of payment." *Beeler v. American Trust Co.*, 28 Cal.2d 435, 440 (1946).  Since Appellant's advances made to pay the taxes are added to the equitable lien and enforced with it, the interest payable should be that paid on the equitable lien itself, i.e. 10%.

Appellees asserted in their briefs that Judge Rimel's ruling is not error because of the doctrine of laches and because Appellant's request to allow the claimed amounts to be tacked on to the equitable lien amount "would have primed intervening liens, without any due process to affected third parties."  At the hearing, however, Appellees conceded that Appellant is entitled to equitable subrogation of the amounts, if proven, that he paid in property taxes and irrigation district assessments.

Appellant's appeal on this issue is GRANTED and the Order denying equitable subrogation of the amounts of real property taxes and irrigation district assessments paid by Appellant, if proven, is REVERSED.

2.  Equitable Subrogation Does Not Permit Appellant to Include in His Credit Bid Amounts Paid as Attorneys' Fees.

43

1    Appellant argues that Judge Rimel's ruling that amounts paid

2  by Appellant for attorneys' fees could not be added to the

3  equitable lien is error.  Appellant complains that Judge Rimel

4  looked only to Judge Ford's 1992 judgment and Judge Ford's

5  finding that, because there was no promissory note to

6  specifically enforce, costs and attorneys' fees should not be

7  included in the amounts of the equitable liens.  Appellant

8  contends that Judge Ford was merely responding to arguments being

9  made to him at that time and that nothing Judge Ford said denied

10  the right to attorneys' fees and costs for other legal reasons

11  after the equitable liens were established, such as equitable

12  subrogation.  Appellant contends:

13          [H]e had to pay $5,960.00 in fees and $945.10
            in costs to renew his equitable lien and
14          obtain appointment of the Receiver ... He has
            ongoing expenses in paying the Receiver to
15          bring the motion to sell.  The bankruptcy
            court's order ... requires payment of $175.00
16          per hour to the Receiver.

17          In addition, Appellant had to pay $9,774.00
            in fees to protect the Properties from the
18          Fresno County tax collection and Consolidated
            Irrigation District.  He paid substantial
19          amounts to protect the properties from
            foreclosure by the Tookmanians ($6,747.00 in
20          fees plus $380.67 in costs to negotiate a
            transfer of the Tookmanian liens so that they
21          could not foreclose).  Then he had to
            litigate with them over that agreement, and
22          that cost a further $8,040.00 fees and
            $386.62 costs.  The cost of litigating the
23          nature, extent and validity of liens case
            before Judge Dorian took $11,531.00 in fees
24          and $59.20 in costs.  Protecting the
            Properties in the second set of bankruptcies
25          (1996 through 1998) took $40,484.00 in fees
            plus $1,643.55 in costs.

26

1    Appellant has not demonstrated that Judge Rimel's ruling was

2  erroneous.  He has not established a basis for equitable

3  subrogation of the amounts paid in attorneys' fees.  Reasonable

4  and necessary attorneys' fees and costs incurred in enforcing a

5  judgment are recoverable, if the underlying judgment includes an

6  award of attorneys' fees authorized by contract.  *See* California

7  Code of Civil Procedure §§ 685.040, 685.070(a)(6); *Imperial Bank*

8  *v. Pim Electric, Inc.*, 33 Cal.App.4th 540, 558 (1995).  There is

9  no such contract.

10    Appellant further argues that Judge Rimel erred in denying

11  his request to include attorneys' fees and costs incurred by him

12  because both the "common fund" and "substantial benefits"

13  doctrines apply.

14    The "common fund doctrine" is explained in 10 <u>Moore's</u>

15  <u>Federal Practice 3d</u> § 54.171[2][a][i]:

16          The [common fund] exception [to the American
             rule] allows the fee movant to obtain
17          recovery of attorneys' fees from a fund
             created, enhanced, protected, or otherwise
18          affected by the litigation.  The exception
             applies (1) when the fund created redounds to
19          the benefit of both the fee movant and other
             beneficiaries who are not named parties to
20          the action, and (2) when a fee assessment
             against the fund would serve to spread the
21          cost of litigation among all of those
             beneficiaries. ...
22
             The most important feature of the common fund
23          exception is that the fee movant's recovery
             must be drawn exclusively from the fund
24          created; neither the litigation opponent nor
             the fund beneficiaries themselves are
25          personally liable for any of the fees.  The
             common fund exception does not provide for
26          shifting of attorneys' fees, but instead for

                                45

spreading of those fees among those benefitting.  As such, the common fund doctrine might be construed not so much as an exception to the American Rule, but rather as entirely outside the prohibitions of that rule.  Most cases and commentators, however, continue to refer to the common fund doctrine as an 'exception' to the American Rule.

Before fees may be awarded under the common fund exception, the fee movant must demonstrate the existence of a common fund.  No common fund is created when the fee movant's recovery does not benefit others, nor when the alleged fund is speculative in nature.  Even if no fund is created, however, fees may be recoverable in the proper circumstances under the substantial benefit exception.

The "substantial benefit" exception is explained supra §54.171[2][b][i]-[iii]:

The substantial benefit exception to the American Rule grew out of and is closely related to the common fund exception.  The common fund exception allows the assessment of attorneys' fees if the fee movant's litigation has created or otherwise affected a fund for the benefit of others and the fee assessment against the fund would serve to spread the costs of the litigation to all those beneficiaries ... The substantial benefit exception performs much the same function when the litigation, although benefitting others, does not create a fund from which the fees may be collected.  Any fee award must be satisfied by the losing party, provided that the party is a collective representative of the class benefitted by the suit.  Accordingly, the substantial benefit exception applies when:

• The litigation has created a substantial benefit for a definable class; and

• The court's personal jurisdiction over a defendant that is a collective representative of

46

the class makes possible an award
of fees that will spread the costs
proportionately among the class
members.

...

In order for the substantial benefit
exception to apply, the court must determine
that the suit has conferred a 'substantial
benefit' on a class of beneficiaries. ....

...

Like the common fund exception ..., the
substantial benefit exception is based on the
equitable notion that persons benefitting
from a suit should pay their proportionate
share of the cost of the litigation.  Both
exceptions are based on spreading the fee
among the beneficiaries, not shifting the
fees to the opponent.  When the fee is
assessed against a common fund, the
distinction between fee-shifting and fee-
spreading is easy to understand.  Under the
substantial benefit exception, however, the
fee is assessed against the litigation
opponent ..., giving the appearance of fee-
shifting.  To ensure that the exception does
not run afoul of the general prohibition
against fee-shifting, the substantial benefit
exception properly applies only when 'the
court's jurisdiction ... makes possible an
award that will operate to spread the costs
proportionately' among the beneficiaries.

For the exception to be validly invoked, the
court must have personal jurisdiction over
some entity, such as a corporation or labor
union, that is composed of the class of
identifiable beneficiaries of the suit.  The
lack of jurisdiction over the collective
entity effectively defeats application of the
exception.  In essence, the entity should be
an alter ego or collective representative of
the beneficiaries.  By imposing the fees on
the entity, the costs of the suit are spread
proportionately to all beneficiaries of the
suit.

Even in the area of derivative suits or suits

47

> against a union ..., if the fee award does
> not serve to spread the cost of the suit,
> fees should be denied.  For instance, if the
> union prevails in a suit brought by a union
> member, the exception does not permit an
> award in favor of the union, because the cost
> of the suit has already been spread to the
> union members through their dues payments.
> For similar reasons, an unsuccessful
> derivative suit should not result in a fee
> award under the exception in favor of the
> corporation.
>
> Outside the area of derivative suits and
> suits against a union, the requirement that
> the fee assessment spread the cost of the
> suit has often prevented application of the
> substantial benefit exception.

Appellant argues that, by dealing with the Fresno County Tax Collector and Consolidated Irrigation District, he was able to preserve the Properties for the benefit of the landowners as well as himself, because he is a secured creditor and a holder of an undivided fee interest in three of the five parcels.  He asserts that he was able to negotiate delays of foreclosure  with the Fresno County Tax Collector to obtain the funds necessary to pay the taxes and then get the remaining taxes into a five-year repayment program, paid by Appellant.  With regard to Consolidated Irrigation District, Appellant contends that he was able to "retrieve title to the Properties" and to obtain monetary concessions.  Therefore, Appellant asserts, these attorneys' fees expenses benefitted the "Properties and the debtors."

Appellant contends that Judge Rimel's reliance on the denial of attorneys' fees and costs in Judge Ford's 1992 Judgment is misplaced because Judge Ford's ruling was based solely on the

absence of a specific contract which prevented specific performance.  Appellant argues that Judge Ford did not rule that attorneys' fees and costs could not be owed based on subsequent events.  Appellant contends that Judge Rimel failed to consider the law properly and thereby abused the discretion she may have had in failing to apply the "common fund" and "substantial benefit" doctrines.  *See In re Lahijani*, 325 B.R. 282, 287 (9th Cir.BAP 2005)("It is an abuse of discretion to apply an incorrect legal rule").

Review of Appellant's motions with respect to which Judge Rimel's orders at issue on this appeal and the transcript of the March 23, 2007 hearing on those motions demonstrates that Appellant did not raise, assert, or argue either the "common fund" or the "substantial benefit" doctrines in support of his contention that he is entitled to add attorneys' fees to the equitable lien.  The Bankruptcy Court cannot have abused her discretion in failing to apply legal doctrines not presented by the moving party.  As a general rule, an appellate court will not consider arguments that are raised for the first time on appeal. *See Self-Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir.1990).  A court may review an issue raised for the first time on appeal only to prevent a miscarriage of justice or when a change in the law raises a new issue while an appeal is pending, or when the issue is purely one of law. *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir.1996).  The decision to consider an issue not raised below is discretionary and such an issue should

1   not be decided if it would prejudice the other party.   *Id.*

2   The issues raised by Appellant concerning application of the

3   "common fund" and "substantial benefit" doctrines are not

4   necessary to prevent a miscarriage of justice; do not raise a

5   pure issue of law but would require extended factual analysis as

6   to the nature and amount of such fees; and will prejudice the

7   Appellees who did not have the opportunity to address these

8   issues to the Bankruptcy Court and develop the record

9   accordingly.   There is no statute or contract providing for the

10  recovery of attorneys' fees.   California Code of Civil Procedure

11  §§ 685.040 and 685.070(a)(6) do not apply.   Appellant is not

12  entitled to recover attorneys' fees through his credit bid.

13  There was no error below.   More importantly, attorneys' fees

14  incurred in litigating disputes with the other property owners

15  cannot be said to have provided a common fund or a substantial

16  benefit.

17  Appellant's appeal on this issue is DENIED.

18  <u>CONCLUSION</u>

19  For the reasons state above:

20  1.   The Order on Motion for Sale of Real Property by Henry

21  Wheeler, Equity Receiver is AFFIRMED IN PART AND REVERSED IN PART

22  AND REMANDED TO THE BANKRUPTCY COURT for further proceedings

23  consistent with this Memorandum Decision.

24  2.   The Order on Motion of Dennis Balakian to Permit Release

25  of Virginia Balakian from Equitable Lien and To Excuse Him from

26  Foreclosing on Her Interests and His Own Under the Equitable Lien

1    **is AFFIRMED.**

2           IT IS SO ORDERED.

3    **Dated:    July 7, 2008             /s/ Oliver W. Wanger**
                                 UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26